**Betty A. RAMSOUR, Appellant (Plaintiff below),**

v.

**GRANGE INSURANCE ASSOCIATION, Appellee (Defendant below),**

**Liberty Mutual Insurance Co. and Alexander Fred Ernest (Defendants below).***

**No. 4488.**

Supreme Court of Wyoming.

Oct. 9, 1975.

James W. Owens, Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, signed the brief and appeared in oral argument for appellant.

G. Joseph Cardine, Cardine, Vlastos & Reeves, Casper, signed the brief and appeared in oral argument for appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK and RAPER, JJ.

RAPER, Justice.

On July 28, 1973, the plaintiff-appellant was involved in and suffered bodily injuries as a result of an automobile collision with an uninsured motorist, the defendant Ernest. This lawsuit followed and claims negligence by Ernest. At the time, plaintiff had a policy of automobile insurance issued to her as the named assured by the defendant-appellee, Grange Insurance Association, with a statutory minimum of $10,000.00 uninsured motorists protection for bodily injury. When the collision occurred, plaintiff was driving a rental automobile. The defendant, Liberty Mutual Insurance, at the same time had in effect a policy of insurance issued to Ford Rent-a-Car, which was available to the operator while driving the rental vehicle, likewise with a $10,000.00 limit for bodily injury. Both policies contained an uninsured motorist supplement protecting the assured for bodily injuries arising out of the use of the uninsured automobile. Both policies contained other insurance excess-escape

* Not parties to this appeal.

clauses.[1] The parties argue on the basis that they are alike and we perceive that they are the same in effect, though slightly different in language arrangement.

Section 31–315.1, W.S.1957, 1975 Cum. Supp., requires that at the time of purchase of automobile liability insurance that there be offered uninsured motor vehicle coverage. That section is as follows:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 31–278 (j), Wyoming Statutes 1957, Compiled 1967, as amended from time to time, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom; provided, however, that the named insured shall have the right to reject such coverages; and provided further that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

Section 31–278(j), W.S.1957, C.1967, referred to in the foregoing statutory provision, provides:

"Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of $10,000 because of bodily injury to or death of one person in any one accident, and subject to said limit for one person, in the amount

---

1. The Grange policy:

"Other Insurance. With respect to bodily insurance while occupying an automobile not owned by the named insured, the insurance afforded by this supplement shall apply only as excess insurance over any other similar insurance available to such insured, and this insurance shall then apply only in the amount by which the applicable limit of liability of this supplement exceeds the sum of the applicable limits of liability of all such other insurance.

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this policy for a greater proportion of the applicable limit of liability of this supplement than such limit bears to the sum of the applicable limits of this insurance and such other insurance.

"Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this supplement, the company shall not be liable under this supplement for a great proportion of such loss than the applicable limit of liability offered by this policy bears to the total applicable limits of liability of all collectible insurance against such loss."

The Liberty policy:

"OTHER INSURANCE. With respect to bodily injury to an insured while occupying an automobile not owned by the principal named insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

of $20,000 because of bodily injury to or death of two or more persons in any one accident, and in the amount of $5,000 because of injury to or destruction of property of others in any one accident."

Plaintiff claims that she is covered to the total limit of both policies. Defendant Grange argues that the plaintiff cannot have the benefit of both policies but must be satisfied with the insurance provided for the rental vehicle—that is, the one she was occupying at the time of the occurrence. In fact, defendant Liberty and the plaintiff have settled so that insurance company is no longer a party to this appeal. The trial judge held for defendant-appellee in granting it summary judgment and adjudged that plaintiff take nothing by her complaint against Grange. This appeal is from that final judgment. The issue here is simply whether under the provisions of her policy with Grange, she has coverage under both that and the Liberty policy. Appellant's damages for her injuries are alleged to equal or exceed the combined policy limits of the Grange and Liberty policies.

█ There is a definite division of authority on the question and both parties acknowledge this. A long line of cases representing the plaintiff's view hold that the "other insurance" escape clauses are invalid to the extent that they will limit insured's total recovery to less than or equal to actual damage within policy limits, of course. Representative of this numerical majority rule are *Motor Club of America Insurance Co. v. Phillips*, 1974, 66 N.J. 277, 330 A.2d 360, and *Walton v. State Farm Mutual Automobile Insurance Co.*, 1974, 55 Haw. 326, 518 P.2d 1399. We agree with

the holdings of those courts, not because of the vast numbers in agreement with them but because of their sound reasoning.[2]

The statute, § 31–315.1, is controlling and it or something closely akin is in effect in many states. Taking it apart, we discover that:

"No policy * * * shall be delivered or issued * * * unless coverage is provided * * * in limits for bodily injury * * * under provisions approved by the insurance commissioner, for the protection of persons insured thereunder * * * from owners or operators of uninsured motor vehicles * * *."

Then follows a clause allowing the insured to reject the coverage.

The minority view, supported by such cases as *Alliance Mutual Casualty Co. v. Duerson*, Colo.1974, 518 P.2d 1177, cited by defendant, generally gives two chief reasons in defense of the position:

1. It is contended that uninsured motorist statutes, such as § 31–315.1, are enacted only in order to assure protection in an amount equal to the amount that would have been payable had the uninsured motorist been insured for the minimum required by statute for any vehicle insurance policy.

2. To invalidate the "other insurance" provisions of the policy would permit inequitable "stacking" or "pyramiding" by allowing the insured to be placed in a better position than he would have been had the uninsured motorist been insured for the statutory minimum.

As to the first point, the statute does not say what is argued. The statute states

2. In *Motor Club*, footnotes 2 and 3, are listed twenty-four states supporting this view and seven contra, with citations of cases. No valuable purpose would be served. for us to duplicate the extensive cataloging. *Walton* likewise contains a comprehensive source of authority, as does *Blakeslee v. Farm Bureau Mutual Insurance Co. of Michigan*, 1972, 388 Mich. 464, 201 N.W.2d 786. There is also an Anno., 28 A.L.R.3d 551, "Uninsured Mo-

torist Insurance: Validity and Construction of 'Other Insurance' Provisions," with pocket-part extensions. This will furnish those interested with references for exploration galore. See as well Widiss, "Perspectives on Uninsured Motorist Coverage," 62 Nw.U.L.Rev. 497, for a splendid history and treatment of the whole area of uninsured motorist coverage and, in particular, pages 519–523, discussing multiple coverages, such as here.

that every policy of insurance that is issued shall be in the amount of the statutory minimum. It does not say that if there is more than one policy covering the insured, that the maximum to be paid would be the minimum limit of one policy. We cannot stretch, extend, enlarge ñor amend what the legislature has clearly said. *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, 632. It must also be noted that a premium has been paid for each of the endorsements and coverage has been issued.

As to the second point, the only answer is that there is no reason to conjecture about how much insurance the uninsured might have had, had he had any at all, by assuming that he would have had only $10,000.00. The only inequity that there could be would be to permit a "stacking" of coverage in order to permit the insured to recover more than his damage and thus gain a windfall. We do not approve such "stacking." On the other hand, to not permit "stacking" to result in a sum equal to or less than insured's damage would result in a windfall to the insurer. "Stacking" to that extent is approved. Here again, we see no such intent as that urged upon us in the language of the pertinent statute.

We see no significance to the fact that the Wyoming insurance commissioner has approved the "other insurance" provisions. He has no authority to approve any policy that eliminates the required coverage because our statute cannot be ignored when it says that "No policy" shall be delivered without uninsured motorist coverage. "No policy" means every policy issued in the context of the statute. There is no coverage in every policy if one of two, as here, does not, in fact, give coverage. The defendant tells us, if we do as we intend to do in this case, insurance rates will go up because plaintiff got what she bargained for—a policy with an escape clause—and they cost less. The ordinary policy holder has not the knowledge, skill nor strength to bargain with an insurance company. It was a take-it-or-leave-it proposition for her. That is an unrelated question; the statute governs and it says nothing of rates. The plaintiff calls our attention to the fact that both policies were paid for and she is entitled to the combined coverage. That, also, is an unrelated question; the important fact is that the policy was issued, subject to the statute and governed by legislated terms. Policies are not issued unless arrangements for payment are made. The statute was designed to furnish protection by insurance for victims of uninsured motorists and for us to refuse to construe the statute literally when such a construction will subserve the socially desirable policy of adequate indemnification of innocent automobile accident victims would be to ignore the legislative mandate and its purpose.

Before closing this opinion, it is noticed that some courts have taken a different approach to arriving at the same result. In *Werley v. United Services Automobile Association*, Alaska 1972, 498 P.2d 112, it was held that since the "other insurance" clauses were identical, when one comes in conflict with another, they are repugnant to each other and must be rejected in toto. In other words, they cancel out each other and it is as though both were non-existent. Under this rule, if the loss is less than the combined policy limits, it is prorated proportionately, according to the limits of both policies. If not, both policies would be effective up to their limits. To the same effect is *Smith v. Pacific Automobile Insurance Co.*, 1965, 240 Or. 167, 400 P.2d 512. We mention these cases because this is the rule of this state in cases other than uninsured motorist situations. *Wyoming Farm Bureau Mutual Insurance Co. v. American Hardware Mutual Insurance Co.*, Wyo.1971, 487 P.2d 320, and *Farmers Insurance Exchange v. Fidelity and Casualty Co. of New York*, Wyo.1962, 374 P.2d 754. In both were involved other insurance excess coverage provisions.

In *Farmers*, it was held (page 760):

"Where the excess insurance clauses of two policies are mutually repugnant, as we find them to be in the policies pres-

ently before us, the liability of the insurers must be prorated in proportion to the liability limits provided by the respective policies. * * *"

Because of the applicable statute here, we base our conclusion primarily on the interpretation of § 31–315.1.

For the reasons stated, we are fully satisfied and hold that the excess-escape paragraph of the "other insurance" provision of the Grange endorsement is repugnant to the statute and is, as applied to the facts here presented, invalid and ineffective. The defendant's motion for summary judgment should have been overruled. We reserve any question as to the potential effect of the provision in relation to any different fact situation.

Reversed.